# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Jeremy Hardwick                    ) <br> ) <br> Plaintiff,              ) <br> ) <br> v.                             ) <br> ) <br> James Johnson and Own the Zone, ) <br> LLC,                           ) <br> ) <br> Defendants.             ) <br> ) <br> ) | Civil Action No.:  4:25-cv-12619-JD <br><br> COMPLAINT <br><br> (Jury Trial Demanded) |

Jeremy Hardwick, individually and in his capacity as a co-owner and member of Own the Zone, LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against Defendant, James Johnson ("Johnson") and Own the Zone, LLC ("OTZ"), and alleges the following:

## THE PARTIES

1. Plaintiff is a resident of Murrells Inlet, South Carolina and a member and co-owner of OTZ.

2. Johnson is a resident of Myrtle Beach, South Carolina and is a member and co-owner of OTZ.

3. OTZ is a limited liability company organized and existing under the laws of South Carolina and having an address of 5050 US Highway 17 Bypass South, Murrells Inlet, SC 29576.

## JURISDICTION

4. This action arises under the Lanham Act pursuant to 15 U.S.C. §§ 1051 et seq.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 2201.

1403213v1

5. The state and common law causes of action are properly before this Court pursuant to 28 U.S.C. §§ 1338(b) and 1367.

6. Venue is proper under 28 U.S.C. § 1391(b), as both Defendants conduct business in this district and OTZ is located in this Division. Moreover, a substantial portion of the acts or omissions alleged herein occurred in this district and division.

## FACTS COMMON TO ALL CAUSES OF ACTION

7. OTZ was formed on May 1, 2024 and is in the business of providing entertainment services in the nature of sports instruction, organizing sporting events and/or tournaments.

8. Plaintiff and Johnson are the co-owners of OTZ and each own a 50% membership share in the company.

9. Separate from his activities, roles or obligations as a member and/or co-owner of OTZ, Plaintiff began building an in sports facility located at 5050 US Highway 17 Bypass South, Murrells Inlet, SC 29576 and where sports training and other sports related entertainment services could be provided (the "Facility").

10. Plaintiff completed construction of the Facility on or about February 2025. Hardwick Properties, a company owned and operated by Plaintiff, is the sole owner of the Facility.

11. Plaintiff's intention was to allow or cause his company to allow OTZ to use the Facility for purposes of providing sports training and/or sports related entertainment services for free.

12. Plaintiff's initial capital contribution to OTZ was $10,000 plus an agreement that OTZ could use the Facility for purposes of providing its services to the public.

13. Plaintiff made further capital contributions in the form of personal payments of many expenses that should have been borne by OTZ and/or the provision of equipment that should have been purchased by OTZ.

1403213v1

14. Johnson's initial capital contribution to OTZ consisted of $5,000.

15. During construction, Plaintiff allowed Johnson to use the Facility, free of charge, to provide sports lessons on behalf of and for the benefit of OTZ.

16. The sports lessons were provided under the source identifying brand name "Own the Zone."

17. The use of Own the Zone (the "OTZ Mark") served to identify OTZ as the source of its sports entertainment services, sports instruction services and/or organization of sporting events, teams and tournament (the "Services").

18. All rights to the OTZ Mark arising out of Johnson's use thereof inured to the benefit of OTZ.

19. To the extent that Johnson's use of the OTZ Mark to provide the Services did not inure to the benefit of OTZ, he assigned any rights he may have had in the OTZ Mark to OTZ as part of his capital contribution to the company.

20. At a minimum, Johnson provided OTZ with a perpetual, royalty free license to use the OTZ Mark in association with the Services.

21. After forming OTZ, Plaintiff and Johnson became involved in a dispute about how OTZ should be run and/or managed.

22. Shortly after the dispute arose, Johnson withdrew the $5,000 that he contributed to OTZ.

23. Mr. Johnson proceeded then to spend the $10,000 that Plaintiff contributed to OTZ and in doing so did not seek Plaintiff's permission, consent or input regarding use of those funds.

24. Following the dispute, Mr. Johnson also revoked Plaintiff's access to OTZ's financial information and/or team management software.

25. Following the dispute, OTZ, through Johnson, continued to provide the Services, including the organization management and training of several baseball teams and/or a baseball tournament league and received revenues and profits for doing so.

26. Despite the fact that Plaintiff continues to be a co-owner of OTZ, neither Johnson nor OTZ have paid or caused to be paid to Plaintiff any portion of the revenues and/or profits received by OTZ.

27. Neither OTZ nor Johnson have ever purchased or acquired Plaintiff's membership shares and/or ownership interest in OTZ.

28. Plaintiff has not withdrawn from or disassociated from OTZ.

29. OTZ is still in good standing and continues to provide services, through Johnson, in exchange for revenues and profits.

30. All revenues and profits received by OTZ are retained by Johnson.

31. Following the dispute, Plaintiff began providing sports entertainment and instruction services in the Facility.

32. Plaintiff advertised and provided those services in association with "The Zone Sports Academy" (the "Zone Mark").

33. Shortly after Plaintiff began using the Zone Mark, Johnson began taking actions to prevent Plaintiff from using the Zone Mark.

34. Johnson informed members of the baseball teams and/or baseball league being managed by OTZ, through Johnson, that if any member was caught visiting and/or using Plaintiff's Facility, such members would be kicked off or otherwise excluded from the team and/or league.

35. Johnson made derogatory and defamatory comments regarding Plaintiff to umpires, directors, officials and/or organizers of various sporting tournaments and/or sports league with the

intention of causing those individuals and/or organizations to cease doing business with Plaintiff and/or barring Plaintiff from entering any of his own teams in the tournaments and/or leagues.

36. On or about January 8, 2025, Johnson posted a statement to OTZ's Facebook account making false, derogatory, and defamatory statements regarding Plaintiff.

37. A true and correct copy of the post is attached as Exhibit 1 (the "Post").

38. In the Post, Johnson stated that "Jeremy Hardwick has taken my family's life savings and entire identity and spit on it, stomped on it and laughed about it with no remorse."

39. On or about January 31, 2025, Johnson sent a letter demanding that Plaintiff cease any further use of the Zone Mark.

40. In so demanding, Johnson cited his ownership of U.S. Trademark Application No. 98199877 for the OTZ Mark (the "Application") as proof of his ownership of the OTZ Mark.

41. On May 13, 2025, the Application for the OTZ Mark matured into U.S. Trademark Registration No. 7796579 (the "Registration").

### FIRST CAUSE OF ACTION
### Declaratory Judgment for Cancellation of a Registered Trademark
### (15 U.S.C. §1064 and 28 U.S.C. §2201)
### (Against Johnson)

42. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

43. Johnson claims to be the owner of the Registration.

44. Johnson has or will seek to use the Registration to force Plaintiff to cease using the Zone Mark.

45. The Registration is invalid and unenforceable and subject to cancellation.

1403213v1

46. The Application was filed as an "intent to use" application under Section 1(b) of the Trademark Act, meaning that Johnson did not claim that the OTZ Mark was being used in commerce at the time the Application was filed.

47. The Application recited the services that would be used with the OTZ mark as "instruction in the nature of baseball, softball, football, soccer, golf clinics; Instruction in the nature of baseball, softball, football, soccer, golf lessons; Providing facilities for sports training; Providing fitness instruction services in the field of baseball, softball, football, soccer, and golf; Providing sports facilities; Educational services in the nature of learning centers featuring instruction in the field of baseball, softball, football, soccer, golf lessons" (the "Application Services").

48. On October 16, 2024, Johnson filed a statement of use in which he stated that all of the Application services were being used in commerce at least as early as "04/00/2024."

49. When making this statement, Johnson acknowledged that "willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

50. At the time this statement of use was submitted, Johnson had not provided all of the Application Services under the OTZ Mark.

51. When Johnson filed the statement of use, neither Johnson nor OTZ had provided instruction services relating to football, soccer, and/or golf.

52. To date, neither Johnson nor OTZ have ever provided instruction services relating to football, soccer, and/or golf.

1403213v1

53. When Johnson filed the statement of use, Johnson had not provided "sport facilities" or "facilities for sports training."

54. When filing the statement of use, Johnson knew the statement of use was false.

55. When filing the statement of use, Johnson knew that the Trademark Office would rely upon the statement of use for purposes of issuing the Registration.

56. Johnson intended for the Trademark Office to rely on the Statement of Use.

57. Johnson knew that absent the false statements contained in the statement of use the Trademark Office would not have issued to Registration for all of the Application Services.

58. Johnson knew that with respect to the instruction services and/or provision of sports facility services for which the OTZ Mark was being used, that use was being made by OTZ not Johnson.

59. The specimen of use that Johnson submitted as evidence of his use of the OTZ mark in association with the Application Services clearly shows that such use was being made by OTZ rather than Johnson.

60. A true and correct copy of the specimen submitted by Johnson is attached as Exhibit 2.

61. The specimen states that "On the Zone Sports Academy is a state-of-the-art health first sports facility…" *Id.* at pg. 1.

62. The specimen goes on to provide the address of Plaintiff's Facility. *Id.* at pg. 2.

63. Johnson has never owned a sports facility, nor has he ever been permitted, in his individual capacity, to provide services at the Facility. Only member, owners and/or employees of OTZ have had the right to use the Facility.

64. Johnson falsely and knowingly alleged that Johnson (as opposed to OTZ) had used the OTZ Mark in commerce.

65. When filing the statement of use, Johnson knew the statement of use was false.

66. When filing the statement of use, Johnson knew that the Trademark Office would rely upon the statement of use for purposes of issuing the Registration.

67. Johnson intended for the Trademark Office to rely on the Statement of Use.

68. Johnson knew that absent the false statements contained in the statement of use the Trademark Office would not have issued to Registration in Johnson's name.

69. Johnson committed fraud on the Trademark Office.

70. Due to the acts, omissions and false statements made by Johnson, the Registration is void and unenforceable.

71. Due to the acts, omissions and false statements made by Johnson, the Registration should be cancelled.

**SECOND CAUSE OF ACTION**
**Declaratory Judgment of Non-Infringement of Statutory or Common Law Trademark**
**(15 U.S.C. §1114, 15 U.S.C. §1125 & 28 U.S.C. §2201)**
**(Against Johnson)**

72. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

73. Plaintiff is the owner of valid common law rights to the Zone Mark.

74. Johnson is alleging that Plaintiff's use of the Zone Mark infringes Johnson's trademark rights in the OTZ Mark.

75. To the extent Johnson has ever had any enforceable trademark rights in the OTZ Mark, he assigned them to OTZ.

76. Alternatively, to the extent Johnson has ever had any enforceable trademark rights in the OTZ Mark, he provided OTZ with a perpetual, royalty-free license to use the OTZ Mark.

77. As a co-owner of OTZ, Plaintiff has a right to use the OTZ Mark.

1403213v1

78. Alternatively, Plaintiff's use of the Zone Mark is not likely to cause consumer confusion with use of the OTZ mark by Johnson and/or OTZ.

79. The OTZ Mark is commercially weak at least because there are many third party uses of confusingly similar marks for the same or substantially related services.

80. The OTZ Mark is conceptually weak as it is descriptive of the services (e.g. batting and pitching instruction services).

81. The parties have been using the OTZ Mark and the Zone Mark in the same market areas for at least seven months without any known or suspected instances of consumer confusion.

82. The consumers targeted by the parties' respective services are sophisticated and/or use a high degree of care when selecting the provider of these types of services.

83. The parties operate in different channels of trade. Plaintiff operates a full service sports facility complex with both instruction and entertainment services.

84. The parties' marks, services and advertising are sufficiently different that consumers are not likely to become confused as to the source of the parties services and/or their affiliation.

### THIRD CAUSE OF ACTION
### Defamation / Libel
### (Against Johnson)

85. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

86. Johnson made false and defamatory statements about Plaintiff both verbally and in writing.

87. These statements were directed to people known to be friends, associates, business partners and/or customers of Plaintiff.

88. Johnson's defamatory statements include statements that expressly and/or impliedly state that Plaintiff is a thief and/or lacks morals.

89. Johnson's defamatory statements include statements that expressly and/or impliedly state that Plaintiff is unfit to provide sports training and/or to manage baseball teams.

90. The defamatory meaning of Johnson's statements are clear.

91. Plaintiff has been approached by numerous individuals who have asked whether Plaintiff stole money from Johnson.

92. Plaintiff has seen a number of comments being posted in response to the Post indicating the author's belief that Plaintiff is a thief and/or is unfit in his profession.

93. Plaintiff has been informed by parents of certain youth players would not be allowed to play on Plaintiff's team because of the statements made by Johnson.

94. Plaintiff owns several other businesses, including a car dealership.

95. Plaintiff has lost customers who have decided not to purchase vehicles from Plaintiff as a direct result of Johnson's defamatory and libelous statements.

96. Johnson made his defamatory and libelous statements with actual malice and with an intent to injure Plaintiff as a means of escalating the dispute between them.

97. Johnson's statements constitute defamation per se, libel per se and/or libel per quod.

98. Plaintiff has suffered actual damages because of Johnson's defamatory and libelous statements.

99. Plaintiff is entitled to presumed damages in an amount to be determined at trial.

100. Plaintiff is entitled to punitive damages.

**FOURTH CAUSE OF ACTION**
**Interference with Prospective Economic Relations**
**(Against Johnson)**

1403213v1

101. To the extent not inconsistent with the below allegations, Plaintiff realleged the allegations contained in the above paragraphs as if fully repeated herein.

102. Johnson knew that Plaintiff was seeking to provide sports entertainment services and/or sports training services in the Facility.

103. Johnson knew that many members of the baseball teams and/or leagues being managed by OTZ were likely to become customers of Plaintiff's services.

104. Johnson informed the members of the baseball teams and/or leagues being managed by OTZ that if they chose to do business with Plaintiff they would be excluded and/or kicked off the team and/or out of the league.

105. Johnson knew that Plaintiff was seeking to form and manage baseball teams to enter into local tournaments and that Plaintiff was likely to successfully form at least one team that would be entered into local tournaments.

106. Johnson informed the members of the baseball teams and/or leagues being managed by OTZ that if they chose to play for any team managed or formed by Plaintiff regardless of whether their participation would interfere with Johnson or OTZ or the teams they were managing that such members would be excluded and/or kicked off the OTZ team and/or out of the OTZ league.

107. Johnson further induced umpires, officials, and/or organizers associated with local tournaments to disallow Plaintiff to enter any teams in the local tournaments.

108. Plaintiff had actual malice in making these statements with an intent to injure Plaintiff.

109. Plaintiff lacked any justification for interference with Plaintiff's prospective contracts.

110. Johnson's statements prevented members of the OTZ teams and/or league from doing business with Plaintiff.

111. Johnson's statements prevent Plaintiff from forming a team and/or entering a team into the local tournaments.

112. Johnson's statements caused Plaintiff damages in the form of lost profits in an amount to be determined at trial.

113. Plaintiff is entitled to both actual and punitive damages.

### FIFTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against Both Defendants)

114. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

115. Johnson owes a fiduciary duty both to OTZ and to Plaintiff as a member and co-owner of OTZ.

116. OTZ has received substantial revenues and profits.

117. At Johnson's direction, OTZ has failed to provide any portion of the revenues to Plaintiff

118. At Johnson's direction, OTZ has failed to provide Plaintiff with access to any corporate records or information, including financial information.

119. Johnson has failed to honor the assignment and/or perpetual license of the OTZ Mark that he provided to OTZ.

120. Johnson is mismanaging OTZ.

121. Johnson, acting in both his individual capacity as well as a co-owner and Member of OTZ, is using funds belonging to OTZ for his personal use.

122. Johnson, acting in both his individual capacity as well as a co-owner and Member of OTZ, is using funds that he knows OTZ has an obligation to pay to Plaintiff.

123. Johnson, acting in both his individual capacity as well as a co-owner and Member of OTZ, withdrew his capital contributions from OTZ.

124. Johnson, acting in both his individual capacity as well as a co-owner and Member of OTZ, is using and/or relying on the capital contributions that Plaintiff made to OTZ for his own personal benefit and/or to continue the operations of OTZ.

125. Without Plaintiff's capital contributions, OTZ would be unable to operate.

126. Neither Johnson nor OTZ are accounting to or consulting with Plaintiff as to the use of Plaintiff's capital contributions.

127. Johnson is exceeding his authority in his management of OTZ.

128. Johnson is breaching his fiduciary duty to Plaintiff.

129. Johnson is breaching his fiduciary duty to OTZ.

130. Johnson and OTZ (through Johnson) are failing to follow OTZ's bylaws.

131. Johnson and OTZ (through Johnson) are violating the limited liability act.

132. Plaintiff is entitled to an accounting of all profits owed to him by OTZ and/or Johnson.

133. Plaintiff is entitled to an accounting of all expenditures made by Johnson while operating OTZ.

134. Plaintiff is entitled to an accounting of all expenditures affecting Plaintiff's capital contributions to OTZ.

135. Plaintiff is entitled to an order of dissolution requiring OTZ to dissolve.

### SIXTH CAUSE OF ACTION
### Piercing the Corporate Veil
### (Against Both Defendants)

136. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

137. Since terminating Plaintiff's access to any of OTZ's information and/or participating in the management of OTZ, Johnson has been acting as the alter ego of OTZ.

138. Since terminating Plaintiff's access to any of OTZ's information and/or participating in the management of OTZ, Johnson has failed to follow any corporate formalities and has done so for the purpose of defrauding Plaintiff and/or converting for his own personal use money that rightfully belongs to Plaintiff.

139. Since terminating Plaintiff's access to any of OTZ's information and/or participating in the management of OTZ, OTZ has been woefully undercapitalized and Johnson is treating the finances of OTZ as his own personal finances.

140. It would be fundamentally unfair if Johnson were allowed to escape liability and/or an obligation to repay the monies he has taken from OTZ and which are owed to Plaintiff.

141. Accordingly, Johnson is personally liable for any debts owed by OTZ to Plaintiff.

**WHEREFORE**, Plaintiff Jeremy Hardwick hereby requests a jury determination of the issues raised and prays that this Court and/or the trier of fact award the following relief:

A. A determination that the Registration of the OTZ Mark is invalid and unenforceable.

B. An order directing the Director of the U.S. Trademark Office to cancel the Registration of the OTZ Mark;

C. A determination that Plaintiff's use of the Zone Mark does not violate any rights in the OTZ Mark and/or the Registration;

D. A determination that Johnson is liable for defamation and/or libel;

E. A determination that Johnson is liable for interference with Plaintiff's prospective contractual relations;

F.  A determination that Johnson has breached his fiduciary duty to OTZ and/or Plaintiff;

G.  An order mandating an accounting of all revenues and profits received by OTZ that are due to Plaintiff;

H.  An order mandating an accounting of all expenditures made by OTZ or by Johnson while operating OTZ;

I.  An order mandating an accounting of all expenditures affecting Plaintiff's capital contributions to OTZ;

J.  An order piercing the corporate veil of OTZ and finding Johnson personally liable for any debts owe to Plaintiff by OTZ;

K.  An order of dissolution requiring OTZ to be dissolved;

L.  An award of compensatory damages, including Plaintiff's lost sales, reputational damages, the costs of the action and attorneys' fees, the amount of which is to be determined at trial;

M.  An award of punitive damages; and,

N.  For such other relief as this Court deems just and proper.

Respectfully Submitted,

KIM AND LAHEY LAW FIRM, LLC

*/s/ Hunter Freeman*
Hunter Freeman (Fed. ID 9313)
3620 Pelham Road, PMB 213
Greenville, SC 29615
Tel. 864-609-3473
hfreeman@kimandlahey.com

*Counsel for Plaintiff*